IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

Monique DiFusco, an individual, and Monique DiFusco, as executor de sons tort of the Estate of Joseph DiFusco (Deceased)

Plaintiff(s)

vs

Sheriff Michael J. Chitwood as Sheriff of Volusia Sheriff's Office, Office Brett Kolterman, and Officer James Greene

Defendant(s)
____________________________/

## COMPLAINT FOR WRONGFUL DEATH

Plaintiffs, **Monique DiFusco** (hereinafter **Monique**) an individual, and **Monique DiFusco**, as **executor de sons tort of the Estate of Joseph DiFusco** (deceased) (hereinafter "**Joseph**") sues the Defendants, **Sheriff Michael J. Chitwood as Sheriff of Volusia Sheriff's Office** (hereinafter "**Sheriff**"), **Officer Brett Kolterman** (hereinafter "**Kolterman**"), and **Officer James Greene** (hereinafter "**Greene**") and alleges:

## PARTIES, JURISDICTION AND VENUE

1) This court has jurisdiction pursuant to 28 U.S.C. § 1331 over the counts or claims based on federal law.

2) This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they arise from a common basis of operative fact and are so related to the federal constitutional claims that they form part of the same case or controversy.

3) **Monique** delivered a pre-suit notification letter to **Volusia Sheriff's Office** on or about **August 3, 2026**. The form and content of the notification fulfills the obligations imposed on these Plaintiffs by Chapter 768.28(6) of the Florida Statues. (**Attached as Exhibit A**).

4) Venue is appropriate in this Courts Orlando division as the acts complained of herein occurred in Ormond Beach, Volusia County, Florida. 28 U.S.C. 1391(b), confers venue to this judicial district.

5) **Monique** is an adult female who is a citizen who at all material times resided in Flagler County, Florida. At all material times, **Monique** was a resident within the Middle District of Florida Orlando Division.

6) **Monique** is empowered to act on behalf of the **Estate of Joseph** in accordance with the provisions of Section 733.309 of the Florida Statues on information and belief that **Joseph DiFusco** died intestate. **Monique**, who resides in Florida, is the surviving daughter. As the adult heir closest in degree to **Joseph**, **Monique** is by virtue of section 733.301(5) of the Florida

Statues, appointed executor de **sons tort of the** of the Estate of **Joseph DiFusco**.

7) This is an action brought pursuant to the provisions of the Florida Wrongful Death Act, Section 768.16 et. seq., Florida Statutes, for the wrongful death of **Joseph DiFusco**.

8) At the time of his death, the decedent, **Joseph**, was over the age of 18 years and at all times material, a resident of Volusia County, Florida.

9) Defendant **Sheriff Michael J. Chitwood as Sheriff of Volusia Sheriff's Office** is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. **Volusia Sheriff's Office** is a municipality located within the confines of Volusia County, Florida. **Sheriff** is subject to this lawsuit under the provisions of Chapter 768.28 (9) of the Florida Statutes. **Sheriff** is responsible for the training, supervision, control and conduct of **Kolterman** and **Greene** and other law enforcement officers employed by **Sheriff**.

10) Defendant, **Officer Brett Kolterman**, is a police officer with **Sheriff**. **Kolterman** is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. **Kolterman** acted within his course and scope of employment relationship with **Sheriff** at all material times.

Alternatively, **Sheriff** ratified the acts and unconstitutional conduct of **Kolterman**.

11) Defendant, **Officer James Greene**, is a police officer with **Volusia Sheriff's Office**. **Kolterman** is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law. **Greene** acted within his course and scope of employment relationship with **Volusia Sheriff's Office** at all material times. Alternatively, **Volusia Sheriff's Office** ratified the acts and unconstitutional conduct of **Greene**.

12) **Monique** has complied with all condition's precedent or in the alternative, all defendants, knowingly and voluntarily waived compliance with conditions precedent.

13) In the alternative, if there has been noncompliance with a statutory condition precedent, as there remains time for strict compliance with the statutory conditions' precedent, the appropriate remedy is abatement of the action to allow for fulfillment of compliance with the condition's precedent.

## COUNT I
## NEGLIGENT FAILURE TO EFFECT MANDATORY INVOLUNTARY MENTAL HEALTH DETENTION

14) Monique realleges paragraphs 1-13 with the same force and effect as if fully set forth herein.

15) On November 26, 2024, a Volusia County Circuit Court Judge, entered a court order requiring law enforcement to acquire custody over **Joseph** and involuntarily detain and transport **Joseph** to a suitable mental health facility for observation and treatment. Notably the order required law enforcement to use force if necessary. (**Duplicate of the Order attached as Exhibit B**).

16) On November 28, 2024, at 4:25 AM, **Joseph** seeking urgent psychiatric help and intervention due to a severe and deteriorating mental crisis made a 14-minute call to 911.

17) During the 911 call **Joseph** made statements such as:

a. "I'm contemplating suicide"

b. "I've been part of a simulation, I believe"

c. "I have tried to harm myself"

d. "I tried injecting myself with cyanide, I tried hanging myself, I tried shooting myself"

e. He describes the firearms he has near him and where they are located.

f. He tells the dispatcher his mental and physical health diagnoses of bipolar disorder type 1, complex post-traumatic stress disorder, akathisia and insomnia.

g. He informs the dispatcher that he is disabled.

h. When asked by the dispatcher if he wants to go to the hospital, he immediately responds “yes”.

18) The interaction between **Joseph DiFusco** and **Officer Brett Kolterman** and **Officer James Greene** as shown on BWC footage in which Joseph DiFusco clearly demonstrate overt signs, symptoms, and behaviors indicating that he was imminently mentally ill, unstable, and posed a severe danger to himself or others.

19) **Joseph** explicitly asked for help, alerting the proper authority and **Officer Brett Kolterman** and **Officer James Greene** to his fragile mental state.

20) Under Florida’s Mental Health Act (the "Baker Act"), Chapter 394, Florida Statutes, **Officer Kolterman** and **Greene** had a duty to properly assess, examine, and stabilize **Joseph**, or initiate an involuntary examination if there was reason to believe he was a danger to himself or others due to mental illness.

21) **Officer Kolterman** and **Greene** failure to communicate what they saw to the EMT’s at scene, failing in transporting him to a mental health facility pursuant to the guidelines in place for suicidal individuals.

22) Despite **Joseph’s** explicit pleas for help and clear clinical indicators of psychosis or severe mental instability, **Officer Kolterman** and **Greene**

failed to perform a proper, thorough, and legally sufficient psychiatric assessment.

23) **Officer Kolterman** and **Greene's** conduct escalating hostility, compounded **Joseph's** existing paranoia and psychological distress.

24) **Officer Kolterman** and **Greene** negligently released **Joseph**, finding he did not meet criteria for containment or further intervention.

25) **Joseph** recognizing that the officers would not provide the requested assistance, **Joseph** attempted to retreat to his residence. **Officer Greene** followed him, placed his hand on his service weapon, and stated, "Hey Joe, don't call us again for this bullshit." **Joseph** observed this gesture and requested that the officer remove his hand from the weapon, staying "Sir, please take your hand off the weapon". The Body-Worn Camera (BWC) footage concludes immediately after an officer asks, "So he's crazy?"

26) Approximately one hour after being released **Joseph** suffered a severe, acute mental health episode directly resulting from his unaddressed illness.

27) Due to his unmitigated mental episode, **Joseph** engaged in erratic, uncharacteristic behavior that directly resulted in an altercation or confrontation where he was shot to death.

28) Had **Officer Kolterman** and **Greene,** properly assessed, stabilized, or held **Joseph** under the Baker Act, his acute mental episode would have been

managed in a secure medical environment, and he would not have been exposed to the dangerous circumstances that caused his death.

29) **Volusia** having undertaken to interact with **Joseph** and charged with effecting a mental health wellness check, had a duty to act reasonably to promote the well-being of **Joseph**. The duty to act reasonably, included the duty to refrain from conduct that would foreseeably cause additional harm. These duties arose because at all material times, **Volusia** had custody of **Joseph**.

30) Under the circumstances alleged in paragraphs 15-29, **Volusia** had the duty to transport **Joseph** to a mental health facility with or without **Joseph's** consent.

31) **Volusia** breached its duty of care in failing to effect an involuntary detention of **Joseph** and instead permitting him to avoid the mandatory involuntary commitment.

32) **Volusia** further breached its duty of care by the statements and actions of its agents, which statements and actions exacerbated **Joseph's** pre-custodial disposition to self-harm.

33) **Officer Kolterman** and **Greene** described negligence to acts of commissions and omissions directly caused the death of **Joseph DiFusco** on November 28, 2024.

34) The policy **Sheriff** chose to address the mental health and crisis intervention needs:

**Volusia Sheriff's Office General Order GO-046-04**

Pages 2-3, Paragraph C – Guidelines for Members During Contacts with the Mentally ill

1. The safety of the person in crisis, the Deputy(s) involved, and the general public shall be of primary concern when responding to calls involving the mentally ill.
2. Deputy safety, and the safety of others, will always be priority. If the initial contact with the person in crisis is not of a criminal or barricaded/high-rusk situation, every effort shall be made when possible to avoid an escalation that may result in criminal charges or the use of protective actions.
3. Deputies shall demonstrate patience and empathy while interacting with mentally ill persons, recognizing that mental illness is a disease and not a conscious decision.
4. Deputies should consider other alternatives to arrest when investigating infractions of a minor nature committed by a person with mental illness. This policy does not conflict with general order *GO-001-06 Pretrial Release and Division Programs*, in that it allows discretion prior to an arrest being made and does not affect the procedures governing what occurs after an arrest is made.
5. Deputies shall evaluate the mental state of any person suspected or accused of a criminal act when conducting interviews or interrogations. While it is not the Deputy's responsibility to determine competency as it relates to the decisions of the court, it is a responsibility to ensure the person undergoing questioning is capable of understanding the nature of the questioning and the potential consequences of any statements given.
6. Civilian personnel, while in the course of their assigned duties, shall summon a Deputy to assist whenever there is an indication of an individual in possible crisis, as learned through agency-provided awareness training. This may be accomplished through

summoning available Deputies at the respective facility, or through contacting the Communications Center. In such cases, civilian personnel shall attempt, to the best of their ability, to keep the individual calm until the Deputies arrive.

Pages 3-4 Paragraph E – Transport of Individuals to Mental Illness Receiving Facilities

1. Deputies may transport individuals to mental health receiving facilities under the following provisions of the Baker Act:
a. When the court issues an *"Ex Parte Order for Involuntary Examination" (CF-MH 3001 or 3002)*, deputies shall deliver the person named in the court order to the nearest facility of involuntary examination, unless the court order specifies a particular facility regardless of location.
b. In compliance with Fla. Stat. § 394.463, deputies shall take custody of and transport individuals to receiving facilities for involuntary examination when there is reason to believe the individual is mentally ill and because of that mental illness, having refused voluntary examination, is unable to determine for themselves whether an examination is necessary; and

- Without care or treatment, they refuse to care for themselves or are likely to suffer from neglect; and that such neglect or refusal poses a real and present threat of substantial harm to their well-being; or
- There is a substantial likelihood that without care or treatment, they will cause serious bodily harm to themselves or others in the near future, as evidenced by recent behavior.

c. Deputies initiating or executing the Baker Act shall complete *Report of Law Enforcement Officer Initiation Involuntary Examination (CF-MH3052a)* and *Transportation of Receiving Facility (CF-MH3100)*. Both forms are necessary for a valid commitment, mandating assessment of the person named.
d. Deputies initiating or executing a Baker Act on a child shall make reasonable efforts to notify the child's parents or guardians of the circumstances prior to making a final determination to Baker Act the Child.
e. Mental illness does not include retardation, developmental disability, autism, simple intoxication, conditions manifested only by antisocial behavior, or drug addiction. Individuals

exhibiting such behavior without the circumstances listed above do not meet the Baker Act criteria.
f. A physician, psychiatric nurse, clinical social worker, or clinical psychologist may complete a *"Certificate of Professional Initiating Involuntary Examination", (CF-MH 3052B)*, usually referred to as a Professional Form 52. Deputies shall take into custody the person named in the certificate and deliver them to the designated Volusia County receiving facility. Deputies shall not transport to facilities outside of Volusia County without a court order or approval of the Watch Commander or equivalent. The deputy shall complete *Transportation to Receiving Facility Form CF-MH3100* indicating the time and date subject was delivered.

35) At all material times, **Sheriff** had a duty to exercise reasonable care to **Joseph**, who was in the custody and control of **Greene** and **Kolterman**. The duty included taking **Joseph**, even without his consent to a mental health facility. **Sheriff** had the additional duty of refraining from acts that would exacerbate **Joseph's** mental health issues.

36) **Sheriff** breached his duty of care by not effecting a mandatory, involuntary mental health commitment when under the circumstances, involuntary commitment was the only reasonable course of action.

37) On the date of his death, November 28, 2024, the decedent, **Joseph DiFusco**, had the following statutory survivors:

a. L.D. (minor child)

b. N.D. (minor child)

c. Monique DiFusco (adult child)

d. Vincent DiFusco (adult child)

e. Denise DiFusco (spouse)

38) As a direct or proximate result of his death, the decedent's estate and statutory survivors have been damaged as follows:

a. Loss of the value of the prospective net accumulations of the decedent, **Joseph**, which might have been reasonably expected but for his wrongful death;

b. Medical and funeral expenses which have become a charge against the **Estate of Joseph** or which were paid by or on behalf of the decedent;

c. The decedent's survivors have suffered and will continue to suffer in the future the loss of the support and services of the decedent;

d. The decedent's natural child has suffered and will continue to suffer in the future mental pain and suffering and the loss of parental companionship, instruction and guidance of their father.

WHEREFORE, the Plaintiff, **Monique DiFusco**, an individual, and **Monique DiFusco, as executor de sons tort of the Estate of Joseph DiFusco** (deceased), demands judgment for damages and an award of taxable costs against Defendant, **Sheriff Michael J. Chitwood as Sheriff of Volusia Sheriff's Office**.

## COUNT II
## FAILURE TO TRAIN ON MENTAL HEALTH CALLS

39) **Monique** realleges paragraphs 1-13 with the same force and effect as if fully set forth herein

40) Under the circumstances alleged **Volusia** had the duty to transport **Joseph** to a mental health facility with or without **Joseph's** consent.

41) On and at material times before November 28, 2024, Sheriff, recognized and acknowledged the need for a policy on the subject of mental health/crisis intervention interaction with those under Sheriff's lawfully designated jurisdiction.

42) The obvious need for policy in **Volusia County** is based on the population of the county, including retirees and veterans of the United States Military. A significant subset of this population is afflicted with mental health issues. **Volusia County** has many tourists who often experience mental health issues.

43) On and before November 28, 2024, it became obvious to **Sheriff** and he was on notice of, that the training on the policy given to **Sheriff's** police force, was inadequate, ineffective and failed to inculcate the police officers with the requisite knowledge of the policy.

44) On occasions before November 28, 2024, **Sheriff's** police officers failed to follow the written policy. Their lack of requisite facility with the policy

resulted in bad outcomes on prior mental health calls resulting in violations of the Fourth and Fourteenth Amendments to the United States Constitution.

45) The occurrence of prior to November 28, 2024, mishandled mental health/crisis intervention coupled with **Sheriff's** failure, omission or refusal to modify or improve the training constitutes deliberate indifference to the need for different or better training on the policy. As such, **Sheriff** deliberately chose an unconstitutional custom or practice or routine in mental health calls and or crisis intervention.

46) As a result of **Joseph's** 911 call (**Appended as Exhibit C**) that explicitly notified **Sheriff** of **Joseph's** suicidal planning and of his contemplation of suicide, **Kolterman** and **Greene** acquired custody and detention power over **Joseph** in the common area parking lot of **Joseph's** residence.

47) Collectively, **Kolterman**, by then a one-year tenured employee of **Sheriff** and **Greene** a long tenured **Volusia County** deputy sheriff and the on scene supervisor of **Kolterman**, displayed the unconstitutional custom, habit or routine that violated **Joseph's** fourteenth amendment right in his life and physical integrity that resulted in a mandatory detention mishandled into and as a voluntary detention, in one or more of the following ways:

   a. Allowing **Joseph** to leave their custody and allowing him to leave the gurney;

b. **Greene** telling him, "Hey Joe, don't call us again for this bullshit."

c. Dismissing **Joseph's** statement on whether he told dispatchers that he was suicidal. "I am not sure to be honest with you, I don't know. It's all a blur. it's all scrambled to me";

d. Converting a mental health call into a drug possession or consumption Terry type involuntary encounter;

e. Demanding a consensual search of **Joseph's** home;

f. By failing to transport **Joseph** in one of either of the two squad cars to a mental health facility, despite the opportunity and need to transport **Joseph**;

g. By failure to discover the pending and in force ex-parte order compelling detention of **Joseph**;

h. By failing to unilaterally effect detention of **Joseph** after the material facts demonstrated an obvious need for an involuntary mental Health commitment;

i. By other acts of commission or omission that might be revealed through pretrial discovery.

48) Before November 28, 2024, **Volusia County Sheriff** deputies used deadly force during the mental health calls and exacerbated the symptoms

experienced by these citizens before **Volusia County Sheriff** deputies arrived:

a. Daniel Donarski, March 16, 2017;

b. Jose Guillermo Flores Colon, June 29, 2017;

c. Thomas Gentry; June 10, 2021.

49) As a direct or proximate result of his death, the decedent's estate and statutory survivors have been damaged as follows:

a. Loss of the value of the prospective net accumulations of the decedent, **Joseph**, which might have been reasonably expected but for his wrongful death;

b. Medical and funeral expenses which have become a charge against the **Estate of Joseph** or which were paid by or on behalf of the decedent;

c. The decedent's survivors have suffered and will continue to suffer in the future the loss of the support and services of the decedent;

d. The decedent's natural child has suffered and will continue to suffer in the future mental pain and suffering and the loss of parental companionship, instruction and guidance of their father.

WHEREFORE, the Plaintiff, **Monique DiFusco** an individual, and **Monique DiFusco**, as **executor de sons tort of the Estate of Joseph DiFusco** (deceased), demands judgment for damages and an award of taxable costs against Defendant, **Sheriff Michael J. Chitwood as Sheriff of Volusia Sheriff's Office.**

**COUNT III**
**CLAIM FOR VIOLATION OF CONSTITUTIONAL RIGHTS TO SUBSTANTIVE DUE PROCESS AGAINST OFFICER BRETT KOLTERMAN**

50) Monique realleges 1-2, 4-8, 10, and 12-13 with the same force and effect as if fully set forth herein.

51) **Officer Kolterman** and **Greene** described negligence to acts of commissions and omissions directly caused the death of **Joseph DiFusco** on November 28, 2024.

52) On and at material times before November 28, 2024, **Sheriff**, recognized and acknowledged the need for a policy on the subject of mental health/crisis intervention interaction with those under **Sheriff's** lawfully designated jurisdiction.

53) The obvious need for policy in **Volusia County** is based on the population of the county, including retirees and veterans of the United States Military. A significant subset of this population is afflicted with mental health issues.

**Volusia County** has many tourists who often experience mental health issues.

54) On and before November 28, 2024, it became obvious to **Sheriff** and he was on notice of, that the training on the policy given to **Sheriff's** police force, was inadequate, ineffective and failed to inculcate the police officers with the requisite knowledge of the policy.

55) On occasions before November 28, 2024, **Sheriff's** police officers failed to follow the written policy. Their lack of requisite facility with the policy resulted in bad outcomes on prior mental health calls resulting in violations of the Fourth and Fourteenth Amendments to the United States Constitution.

56) The occurrence of prior to November 28, 2024, mishandled mental health/crisis intervention coupled with **Sheriff's** failure, omission or refusal to modify or improve the training constitutes deliberate indifference to the need for different or better training on the policy. As such, **Sheriff** deliberately chose an unconstitutional custom or practice or routine in mental health calls and or crisis intervention.

57) As a result of **Joseph's** 911 call (Exhibit C) that explicitly notified **Sheriff** of **Joseph's** suicidal planning and of his contemplation of suicide, **Kolterman** and **Greene** acquired custody and detention power over Joseph in the common area parking lot of **Joseph's** residence.

58) As of November 28, 2024, **Joseph's** had a clearly established right under the Fourteenth Amendment of the U S. Constitution to life and physical integrity and protection from self-harm while in custody of law enforcement.

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

59) **Kolterman**, displayed deliberate indifference to Joseph's rights conferred to him under the Fourteenth Amendment in one or more of the following ways:

a. Allowing **Joseph** to leave their custody and allowing him to leave the gurney;

b. **Greene** telling him, "Hey Joe, don't call us again for this bullshit."

c. Dismissing **Joseph's** statement on whether he told dispatchers that he was suicidal. "I am not sure to be honest with you, I don't know. It's all a blur. it's all scrambled to me";

d. Converting a mental health call into a drug possession or consumption Terry type involuntary encounter;

e. Demanding a consensual search of **Joseph's** home;

f. By failing to transport **Joseph** in one of either of the two squad cars to a mental health facility, despite the opportunity and need to transport **Joseph**;

g. By failure to discover the pending and in force ex-parte order compelling detention of **Joseph**;

h. By failing to unilaterally effect detention of **Joseph** after the material facts demonstrated an obvious need for an involuntary mental Health commitment;

i. By other acts of commission or omission that might be revealed through pretrial discovery.

60) As a direct or proximate result of his death, the decedent's estate and statutory survivors have been damaged as follows:

a. Loss of the value of the prospective net accumulations of the decedent, **Joseph**, which might have been reasonably expected but for his wrongful death;

b. Medical and funeral expenses which have become a charge against the **Estate of Joseph** or which were paid by or on behalf of the decedent;

c. The decedent's survivors have suffered and will continue to suffer in the future the loss of the support and services of the decedent;

d. The decedent's natural child and family have suffered and will continue to suffer in the future mental pain and suffering.

61) **Monique** is obligated to pay her counsel a reasonable fee for his legal services to this case. Pursuant to 42 USC § 1983 **Monique** is entitled to an award of attorney fees to be paid for by **Kolterman** if she prevails in this count for violation of constitutional rights to substantive due process. **Monique** requests an award of reasonable attorney fees in the event she prevails in this count

WHEREFORE, the Plaintiff, **Monique DiFusco** an individual, and **Monique DiFusco**, as **executor de sons tort of the Estate of Joseph DiFusco** (deceased), demands judgment for damages and an award of taxable costs against Defendant, **Officer Brett Kolterman.**

**COUNT IV**
**CLAIM FOR VIOLATION OF CONSTITUTIONAL RIGHTS TO SUBSTANTIVE DUE PROCESS AGAINST OFFICER JAMES GREENE**

62) **Monique** realleges 1-2, 4-8, and 11-13 with the same force and effect as if fully set forth herein.

63) On and before November 28, 2024, it became obvious to **Sheriff** and he was on notice of, that the training on the policy given to **Sheriff's** police

force, was inadequate, ineffective and failed to inculcate the police officers with the requisite knowledge of the policy.

64) On occasions before November 28, 2024, **Sheriff's** police officers failed to follow the written policy. Their lack of requisite facility with the policy resulted in bad outcomes on prior mental health calls resulting in violations of the Fourth and Fourteenth Amendments to the United States Constitution.

65) The occurrence of prior to November 28, 2024, mishandled mental health/crisis intervention coupled with **Sheriff's** failure, omission or refusal to modify or improve the training constitutes deliberate indifference to the need for different or better training on the policy. As such, **Sheriff** deliberately chose an unconstitutional custom or practice or routine in mental health calls and or crisis intervention.

66) As a result of Joseph's 911 call that explicitly notified **Sheriff** of **Joseph's** suicidal planning and of his contemplation of suicide, **Kolterman** and **Greene** acquired custody and detention power over Joseph in the common area parking lot of **Joseph's** residence.

67) As of November 28, 2024, **Joseph's** had a clearly established right under the Fourteenth Amendment of the U S. Constitution to life and physical integrity and protection from self-harm while in custody of law enforcement.

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the

> State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

68) **Greene**, displayed deliberate indifference to **Joseph's** rights conferred to him under the Fourteenth Amendment in one or more of the following ways:

a. Allowing **Joseph** to leave their custody and allowing him to leave the gurney;

b. **Greene** telling him, "Hey Joe, don't call us again for this bullshit."

c. Dismissing **Joseph's** statement on whether he told dispatchers that he was suicidal. "I am not sure to be honest with you, I don't know. It's all a blur. it's all scrambled to me:;

d. Converting a mental health call into a drug possession or consumption Terry type involuntary encounter;

e. Demanding a consensual search of **Joseph's** home;

f. By failing to transport **Joseph** in one of either of the two squad cars to a mental health facility, despite the opportunity and need to transport **Joseph**;

g. By failure to discover the pending and in force ex-parte order compelling detention of **Joseph**;

h. By failing to unilaterally effect detention of **Joseph** after the material facts demonstrated an obvious need for an involuntary mental Health commitment;

i. By other acts of commission or omission that might be revealed through pretrial discovery.

69) As a direct or proximate result of his death, the decedent's estate and statutory survivors have been damaged as follows:

a. Loss of the value of the prospective net accumulations of the decedent, **Joseph**, which might have been reasonably expected but for his wrongful death;

b. Medical and funeral expenses which have become a charge against the **Estate of Joseph** or which were paid by or on behalf of the decedent;

c. The decedent's survivors have suffered and will continue to suffer in the future the loss of the support and services of the decedent;

d. The decedent's natural child and family have suffered and will continue to suffer in the future mental pain and suffering.

70) **Monique** is obligated to pay her counsel a reasonable fee for his legal services to this case. Pursuant to 42 USC § 1983 **Monique** is entitled to an award of attorney fees to be paid for by **Greene** if she prevails in this count

for violation of constitutional rights to substantive due process. **Monique** requests an award of reasonable attorney fees in the event she prevails in this count.

WHEREFORE, the Plaintiff, **Monique DiFusco** an individual, and **Monique DiFusco**, as **executor de sons tort of the Estate of Joseph DiFusco** (deceased), demands judgment for damages and an award of taxable costs against Defendant, **Officer James Greene.**

**COUNT V**
**SUPERVISORY LIABILITY CLAIM AGAINST OFFICER JAMES GREENE**

71) **Monique** realleges 1-2, 4-8, 11-13, and 63-70 with the same force and effect as if fully set forth herein.

72) As of November 28, 2024, **Joseph's** had a clearly established right under the Fourteenth Amendment of the U S. Constitution to life and physical integrity and protection from self-harm while in custody of law enforcement.

73) **Greene** directly supervised **Kolterman** during **Kolterman's** interaction with **Joseph** and possessed supervisory authority over **Kolterman** during the interaction alleged herein.

74) **Greene** personally participated in the unconstitutional conduct carried out by **Kolterman** on **Joseph**. Therefore, **Greene** is liable for his failure to prevent **Kolterman** from carrying out the unconstitutional conduct.

75) As a direct or proximate result of his death, the decedent's estate and statutory survivors have been damaged as follows:

a. Loss of the value of the prospective net accumulations of the decedent, **Joseph**, which might have been reasonably expected but for his wrongful death;

b. Medical and funeral expenses which have become a charge against the **Estate of Joseph** or which were paid by or on behalf of the decedent;

c. The decedent's survivors have suffered and will continue to suffer in the future the loss of the support and services of the decedent;

d. The decedent's natural child and family have suffered and will continue to suffer in the future mental pain and suffering.

76) **Monique** is obligated to pay her counsel a reasonable fee for his legal services to this case. Pursuant to 42 USC § 1983 **Monique** is entitled to an award of attorney fees to be paid for by **Greene** if she prevails in this count for violation of constitutional rights to substantive due process. **Monique** requests an award of reasonable attorney fees in the event she prevails in this count.

WHEREFORE, the Plaintiff, **Monique DiFusco** an individual, and **Monique DiFusco**, as **executor de sons tort of the Estate of Joseph DiFusco** (deceased), demands judgment for damages and an award of taxable costs against Defendant, **Officer James Greene.**

**DEMAND FOR JURY TRIAL**

The Plaintiffs demand a trial by jury on all such issues triable as a matter of right.

Respectfully Submitted,

**LAW OFFICES OF OSCAR SYGER, P.A.**
6815 Willow Wood Drive, Unit 4043
Boca Raton, Florida 33434-3511
Telephone: (561) 599-0638
Email:oscarsyger1218@gmail.com
Secondary Email:
secretaryofoscarsyger@gmail.com
Website: https://www.sygerlaw.com

By: */s/ Oscar Syger* .
OSCAR SYGER, ESQUIRE
FLORIDA BAR NUMBER: 381373